Mr. Strupe, you wish to divide your time with Mr. Adamo and we're not going to keep track of that so you have to just stop and leave him some time. Thank you. You may proceed. May it please the Court, the District Court below addressed and correctly considered each of the arguments that will be presented below. In making the motion, LG and GE submitted claim charts at A5552-75 which set forth the evidence and testimony including references to the prior article, including references to the Hitachi, including expert report documentations and including videos. And in their brief, they indicated that each and every claim was anticipated and invited Whirlpool to identify any differences. Whirlpool in response relative to the claims identified three differences and three differences only. Number one, it argued that the inverse toroidal motion, which admittedly occurred in both the Hitachi and the Daewoo prior art, was not occurring by dragging forces. Argument number two, they argued that the Hitachi and the Daewoo machine did not provide impeding and did not provide relative angular motion. Those were the only three arguments they presented relative to the claims. They also argued that the Daewoo machine had been modified. The District Court addressed each and every one of those arguments. By the way, I find it really a little unsettling that we're hearing arguments in favor of the Court's judgment first. You know, usually the appellant is the one who lost on the major issues below. I understand your preemptory strike on attorney fees, and maybe you can do that, but next time think about whether it's wise or not, all right? I understand your concern, Your Honor. You may proceed. Go ahead. If I may proceed, I greatly appreciate it. Yeah, go ahead. We have the interesting aspect of dividing time, and I think that, in truth, the major points in the limited 15 minutes relate to the validity of the judgment. I understand that. It's just that we haven't heard their concerns about the judgment, and you're already defending it. Go ahead. All right. Thank you very much, Your Honor. Let me address the dragon. The Hitachi patent, in the four corners of that patent, and there had been no dispute regarding the correct interpretation of that Japanese reference. There's been no dispute that that cannot be understood. Both Whirlpool and GE and LG seem to understand that until after the court ruled against Whirlpool. But the Hitachi patent clearly discloses inversatorial motion. It clearly discloses all of the components disclosed in the 722 patent that operate on the water and close. It clearly discloses that there needs to be low water to create ITM. But doesn't the patent show that Hitachi's close lose frictional engagement with the impeller, which is contrary to the claimed invention? I don't believe that it does, Your Honor. And if one looks at that drawing alone and reaches that conclusion, once one reads the patent... Isn't the water level too high for the claimed invention? No, Your Honor. The patent expresses... It seems that you have the reverse toroidal motion, but it seems also that those other aspects, we're dealing with anticipation here. Yes, Your Honor. So if you miss one little aspect, you're out of the anticipation game. That's correct. And I just gave you two. And remember, this is issues of fact because it's anticipation. So water level's too high and you lose frictional contact with the impeller. How do you deal with those to make the Hitachi anticipatory? I don't understand, Your Honor, how you reach the conclusion that the water level is too high. I'm just saying those are issues of fact, are they not? They're going to tell me that they are. I don't believe they are, Your Honor, because the Hitachi patent expressly teaches that the water-cloth ratio needs to be 10 or under, which is well under the typical operation where you get toroidal operation. It expressly explains that you get the inverse toroidal by touching. It expressly explains that the... Well, Hitachi says that the impeller temporarily stops, but the clothes continue rotating. That can only happen if they're floating. They're not in frictional contact with the impeller, right? I don't agree, Your Honor. But doesn't that at least create an issue of fact as to whether they're still floating, the water level's too high, and they're not in frictional contact with the impeller? I don't believe so, Your Honor. If one compares the Hitachi teaching with the 722 patent teaching, they're identical. If anything, the Hitachi teaching is more detailed in the need to have low water level, is more detailed that you have contact. The mere fact that in inertia, these impellers move backwards and forward, and there's going to be frictional contact, but when you change momentum and you have cloth, wet cloth, that wet cloth is going to have a momentum. The fact that it's going to have inertia and continue to move before the impeller, through friction, overcomes that force and comes back... But is that movement caused by friction or by the fluid dynamics of the movement of the water at that point? I think it's caused by neither, Your Honor. I think that it's caused by the angular acceleration. There is a momentum on that cloth, and that cloth will want to continue to go in the direction it's going. If you make a quick change, then it will continue to go in the same direction because it's momentum, and then the friction will ultimately overcome that and move it back. I don't believe that it is cloth that is moving at all. With respect to the 7.22 patent, the 7.22 patent expressly teaches and Whirlpool in its brief expressly admits that an impeller machine is going to throw the water out. So then the question is, how can it come in? And the answer is, it can only come in through contact and frictional forces. And that's what the 7.22 patent teaches, and that's what the Hitachi patent teaches. So the teachings are identical. I'm not here to be an expert, Your Honor, but I think that if one compares the teachings of the 7.22... If there is any issue of fact, it can't be decided on summary judgment, right? If there is a genuine issue, a disputed fact, I agree with that wholeheartedly, Your Honor. With respect to the Daewoo machine, there is no question that the Daewoo machine is part of art. There is no question that the Daewoo machine provides inverse toronto motion. But there is a big question as to exactly what the Daewoo machine was at that time. I don't believe that there is, Your Honor. I believe that the testimony is absolutely clear that the Daewoo machine had all of the components. There was a video that was provided to the court. There was a video that was reviewed by the experts. The experts actually saw the machine, and the testimony is that it has all of the components, and it operates, and it creates inverse toronto, and that it creates by dragging through testing done by Dr. Sodell, and they have no testing on the other side. Your Honor, I'm seeing that I'm running... I'll ask Mr. Adamo. Mr. Adamo? Your Honor, our intention was that... Yes, understood. I know you have your intentions, and we have our intentions. I seem to remember last I was before this court, Your Honor, and I ended up in a very similar discussion when I had... I think so. My intention is to ask you on the Hitachi reference. Yes. The inventor had a declaration. He says if the water level is too low, my machine doesn't work. Isn't that a suggestion that he is dealing with a high-level machine, and there's not frictional contact, there's floating of the clothes? No, and there's several basic problems. First of all, that declaration was struck by Chief Judge Bell, even though there was some reference to it in his decision, but it was struck. But second of all, the issue was not what the inventor may or may not have said. What the inventor says is irrelevant. This is a prior art situation on a printed publication, a published Japanese application, and the inventor can talk from now until tomorrow morning. It's totally irrelevant. All that counts is the written word on the face of the published Japanese document. That's the prior art. So with respect, whatever the inventor may have said is totally irrelevant. The point here on Hitachi, I think the thing that, with respect, the Court is missing is that although it's rare in a non-chemical case to talk about genius species, you do have to remember that Hitachi has a variety of embodiments disclosed in it. And for anticipatory purposes, you've only got to die once. If one of the embodiments does it, the fact of Figure 5, which is what the Court was discussing with my co-appliee, Matt Palente, we'll brief. Sorry, Your Honor. We don't know what you are either. That was my point. Judge Blaker, people have been saying that about me for years, as Your Honor may well be aware. But in any event, the point is you were addressing Figure 5. And when Chief Judge Bell looked at this similar argument, he said, well, there's a failure of evidentiary support for this Figure 5 argument because he said you've got to look at Figure 4, which fits in with the general teaching of the 10 to 1 lower water ratio and the Figure 4 is the rollover figure that shows if you go too high, then you may have some issues. But this whole Hitachi reference, just like 722, it really is jumping out 722, is recognizing if the water is too high, you will get toroidal. If the water is lowered, which is what Hitachi and 722 are directed to, you will get inverse toroidal. Hitachi has a number of embodiments, species, if you will. But the Figure 5, you agree, does show the water level above the close which suggests floating, no friction and no anticipation. Well, quite frankly, Your Honor, I don't agree. And if you look at the specification portion But have we got an issue of fact here? Well, if you have an issue of fact based on Figure 5, it is irrelevant. Remember, it's a genuine issue. Well, I understand that you'd like to focus on something else but if the Hitachi disclosure can be interpreted as something that lacks all the anticipatory elements, then we have an issue of fact, don't we? No. You don't have a genuine issue of material fact because if there's two embodiments and the questioning all here directed is to one of the embodiments, with respect, if the other embodiment anticipates, Judge Bell will still weigh in. Your argument is if there is an argument that this anticipates even though there's an argument that it doesn't, the fact of an argument that it does is enough and takes it out of the category of a genuine issue of disputed fact. No, because it's not a genuine issue of disputed fact. It's a genuine issue of material fact and if there's two species, two embodiments and one anticipates, it doesn't make any difference what the other one does. Clearly, there's no teaching away in anticipation, so the fact that there could be another embodiment that says go in this direction, this is not obvious. Even though the argument is over what that embodiment says. Right, because it's not material. As long as the other embodiment, which is clear here, teaches low water, figure four, it's all directed to inverse toroidal, figure three and Hitachi shows that. The fact that there could be a second embodiment that doesn't anticipate is not only irrelevant, but the main point is it does not give rise to a genuine issue of material fact because it's not material to whether the reference anticipates. What about the ratios that are discussed in the Hitachi patent? Does that have any impact? It's teaching low water, your honor. That's really the point. The ten or less shown in figure four, it's the solid graph. There are two graphs in figure four. It's a little confusing, but it's the solid graph and demonstrating that you want the turnovers to stay off, so you're going down to the lower But the ratios need to be maintained because your water basket could be larger or smaller as long as your ratio is the same below the ten, then you would still get the ITM. Yes, from what I know from the occasions that I've ever washed clothes in a clothes washer, normally you fill up to a certain point and you wash it again. At the risk of saying something very politically incorrect, my wife doesn't let me in the basement, Judge. Okay. Let me understand something. The machine I have at home, which I use fairly regularly, is neither a Whirlpool nor a GE and if I understand the record, the ratio is something like thirty to one? Is that the typical ratio? I believe that high water is twenty-five to one or higher, I believe, is what the record would support. Mr. Stewart is bailing me out here. So the ten to one is an indicator of something below standard. Is that correct? Yes, and there are indications of specific disclosure on the face of the Hitachi application. It's not in inches, it's in metric units, but it works out to depths of eleven down to five inches, so it's very clear in these other embodiments that you have a low water disclosure. Notwithstanding the level, whether it's measured in inches or millimeters or whatever, it's still a ratio that has to be maintained. Yes, you don't want the Hitachi as well as 722 starts from the basic point that if you've got the cores floating and you have an impeller, physics will make toroidal motion. You have to have a low enough water level at the close which is all disclosed in Hitachi that you have to have a low enough water level so that you get the inverse toroidal motion. Mr. Adamo, we need to hear from the other side. Yes, Your Honor. Now, am I done or do I have a little time left? We'll make sure you get a little time for rebuttal. You want time to argue your actual appeal? Never mind. No, actually, what I want is to have time to answer your question about the alleged question of the identity of the Daiwa machine. That's what I would like to do. I would like to know. Well, we'll hear from the other side, I'm sure, on that one. Daniel Boehnig, representing World Bank, Your Honor, and we appreciate the Court's recognition of the unique procedural posture of the appeal. Yes, somebody ought to rethink that and I'm sure they will next time, won't they? Please proceed. I want to first address directly some of the misstatements of counsel and then we'll lay out the many facts that we believe are genuine issues of disputed material fact. First, to me, it's stunning that GE's counsel would suggest that inventor testimony is irrelevant because, of course, they rely very heavily on one of the inventor testimonies. The Hitachi reference had at least two people who brought in their inventor first that was Shikamori and after that we located Mr. Fukuzawa who was the chief inventor. It seems to me like you've got to deal most directly with Mr. Adamo's contention that the figure 4 at least shows the low water level. Even if figure 5 is the high water level and clothes floating, maybe you don't have that in figure 4. Very quickly though, I do want to note that the Fukuzawa declaration was not struck. It was cited and relied on by the district court. Once he relied on it in his opinion, you don't have any concern on that level. LG's counsel is wrong in saying that it's admitted that the Daewoo performs ITM. That is not correct. LG's counsel is wrong in saying the interpretation of the Hitachi as to dragging is undisputed. It's very clear that the interpretation on Hitachi basically tries to leverage off of what I think of as they want to say there is some universal law that any time you see inverse toroidal motion, it necessarily means that there is dragging going on underneath. Their entire case is premised on that. That is a high level factual dispute which is layered, multiply layered by many underlying material facts. Our expert Duncan submitted a declaration that described in great detail, not conclusory, but in great detail how there is fluid ways of achieving inverse toroidal motion that do not involve dragging. In particular, he lays that out in relation to the Hitachi reference. In relation to the questions that the court was asking, the Hitachi reference and this again is all laid out in Duncan's declaration and his deposition, but the Hitachi reference has text which talks about how the clove pass by the impeller. They clearly are not being dragged by the impeller when they pass by the impeller. This is where it is talking about how Where is that? I was quoting from Well, the passing by, your honor, in Duncan's declaration, that is at A73.10 to 73.11 and then also Fukuzawa at 51.67 Within the text of the document 72.40 we think 72.40 in paragraph 6 paragraph 6 right and that is where the paragraph 6 says furthermore because the cloth reliably passes by the blade surface of the impeller the entire cloth uniformly describing friction force of the impeller If the cloth is being dragged by a impeller, it is not going to be passing by it. It is saying that there is once the our contention is that the impeller is pushing these cloves it is not pulling, it is pushing and you have a very different sort of a dynamic that is going on when it is being pushed instead of pulled long pulls are, you can think of them as a rope and if you push a rope, you get a very different reaction than when you are pulling a rope and if you now think of, if you are pushing this rope and all of a sudden it stops and the fluid is still flowing, the fluid continues to now move forward through inertia and to that rope or piece of cloth so that it is passing by, it is lifting up and passing by the impeller Is your contention that Hitachi is pushing the rope rather than pulling it? Yeah, our contention is that Hitachi is not working by pulling, well it is clothing, okay, it is pushing the clothing and I am analogizing clothing because a clothing is when it is in a wash, it is long it is very flexible you can think of it as if it were like a rope the dynamics of how If I think of it like a rope, I don't get very far and I am not at all sure I can push wet clothes and get very far Oh, at the bottom of a washing machine, absolutely, the impellers are going to be moving back and forth and the real question here is whether the clothes are being dragged by the impeller or whether they are being pushed by but let me go on because the point is our contention is that Hitachi is achieving inverse toroidal motion through the fluid motion, it is setting up inverse toroidal action of the fluid wash liquid and that is carrying the cloth along What am I to make of column one in the Hitachi claim one, a washing machine comprising an impeller in the bottom portion of a washing tank where in washing is conducted by repeating a cloth movement in which the blade of the impeller acts directly upon a cloth It is, it is pushing, it is acting directly upon the cloth it is pushing that cloth and then as it reverses motion the other side of the impeller from the opposite impeller is pushing it in the other direction it is acting directly on that cloth How do I know it is not dragging it directly on that cloth What is it in that sentence that negative in the concept of dragging There is several things, in the text of the reference it talks about how once the impeller stops the cloth passes by the impeller, that is because the fluid motion, the fluid is still acting, still moving forward and carrying the cloth along with it, and that is the point at which the cloth is now lifting up and twisting and spiraling up and away from the impeller Second of all, the Hitachi if you go to figure 5 of the Hitachi reference it shows the motion of the cloth and you can see that that is a very fluidic motion you can't obtain that kind of a fluidic spiraling pattern by a mechanical dragging back and forth. Again, if you think of taking a piece of cloth and dragging it back and forth, it just simply is not going to move in that kind of a fluidic manner. So figure 5 of Hitachi also shows that In addition, figure 3 of Hitachi shows the water levels and if you compare this was shown in our brief at page 25 if you compare figure 3 of the water level in Hitachi to figure 5 of the water level in the 722 patent you can see that those are dramatically different. The Hitachi reference must have water above the clothes. Whereas in the 722 patent you must have the water level which is lower than the clothes. Clearly shown in figure 3, figure 5 explained at length by our expert Duncan. In addition the Hitachi reference Excuse me, counsel. How do you then justify the statement that's made in Hitachi on column 4 showing the level of water level shown in figure 4 this number of place changes has maximized the water level 190 millimeters which is considerably lower than a conventional washing machine. It is I'm sorry Judge Carson. It is true that Hitachi does seek to achieve lower water level than traditional conventional impeller machines but it is not achieving the low water level that's necessary to achieve inverse toroidal motion by dragging. It is still working by fluid forces. The fluid levels, the fluid motions go through a number of different dynamic cycle changes, transition changes depending upon the water level. And if you look at figure 3 and figure 5 there isn't a dispute that Hitachi may be lower than other than some, some other impeller machines. The dispute is that the Hitachi water level is nowhere near as low as what's required and shown in the 722 pattern. That's illustrated in our brief at page 25 by comparing figure 3 of Hitachi to figure 5 of of the 722 pattern. But doesn't figure 3 then show the ITM? Yes. There isn't there is no dispute that Hitachi teaches ITM. But it teaches it through fluidic motion not through dragging. Well what is the difference then between friction and fluid motion? What is the basic difference in your judgment? The friction of the 722 pattern is dragging the cloth upstream. In the 722 pattern the fluid is moving outward at the very bottom level. But it's still dragging it out isn't it? No. Well the water is moving outward. The water by itself would tend to move the the water level is so low you have the cloth on top above the water level pushing down. That's creating friction at the bottom level between the cloth and the impeller. And when the impeller moves back and forth it's dragging the cloth in that back and forth motion because of the downward pressure from the clothes which are high above the water level. That's why you get this zigzag motion that we show in figure in our brief comparing it to the spiral motion of figure 5. As the fluid is flowing outward the impeller friction between the impeller and the cloth is dragging the clothes literally upstream of the water flow which lends to greater cleaning ability at an even lower water level. But isn't that friction? Friction is dragging is defined But is that friction? Yes. And well, for purposes of infringement we have very sophisticated tests showing that. For purposes of invalidity there's not a shred of evidence that the Hitachi does anything remotely similar to that. I understand that somebody just stuck their hand into the tub to determine whether or not And he didn't even do that for the Massachusetts machine. He only did that for a Louisville machine which they gave up on after we showed that it doesn't do what their expert said it does. Mr. Boehner you have a little problem here and that is I don't think I can remember a case where there's two anticipatory references. It's rare that you can find one and here we have two. Doesn't that suggest that the Daewoo reference is pretty difficult for you to overcome? No, I don't think the Daewoo reference is at all difficult to overcome, Your Honor. What we have is a verbal shell game of trying to link together to create arguments that aren't there. There is not a shred of evidence in the record that anybody ever saw inverse toroidal motion in the Massachusetts Daewoo before the critical date of the patent and I'll elaborate on that. Moreover there's not a shred of evidence that Mr. Lowe testified he purchased it in 97. Yes, he purchased it in 94 for the purpose of performing wet cleaning and he says that in 97 he was fully doing wet cleaning and there's no dispute that wet cleaning is an entirely different, very high water level way of doing it. There is no dispute and their brief even admits that there's no dispute that anything dealing with wet cleaning is irrelevant because that clearly did not involve inverse toroidal motion. Remember, the manufacturer's brochure here shows that the Daewoo does not work by inverse toroidal motion. The manufacturer's own brochure, and that's cited in our brief, it's the big color picture, shows that it works by regular toroidal motion. So what they did is this. Address my point. There's two references which if they don't anticipate they're close. I mean we're talking about pretty minor points to show that there may be an issue of fact. Why doesn't that weigh on the court's mind as supporting the district court's summary judgment? Well, because both of those arguments of anticipation were achieved by a verbal shell game. If I can continue. First, as to the Hitachi. The argument there is that because there's some universal law that any time you see inverse toroidal motion it necessarily implies dragging. We've explained it great length that isn't true. And our expert has detailed that in his report. The Hitachi reference... But you do have a figure 4 there that shows potentially lower water levels. Well, lower than conventional, but nowhere near as low as what's required to achieve dragging. The water level shown in Hitachi figure 4 is higher than the close. So the close are necessarily going to be floating. There's no weight of the close above the water level pushing down on the close which is needed to achieve dragging. Figure 4 of Hitachi... Then what is your argument on the Daewoo? On the Daewoo, they have no testing that shows dragging and there's no evidence that anybody saw any inverse toroidal before the critical date. Our people worked with the Daewoo and they worked with it extensively and it never demonstrated inverse toroidal motion of any kind until they applied a specifically designed controller to change the way it works. Mr. Lowe, his only testimony about actually using it before the critical date is with wet cleaning cycles. There's a shell game here in the word normal. He never testifies that he used normal cycles before the critical date. Lowe testified that he saw inverse toroidal in normal cycles, but he never says that he did normal cycles before the critical date. So what they do is mix up this word normal and cycles and it all gets very confusing. But we've got a Daewoo distributor in Georgia who says that he's never seen inverse toroidal motion and that people return the machines because they use too much water. We've got testing of a Daewoo machine that LG had in Louisville and we showed that it doesn't have inverse toroidal motion. Can we go back to the figure four of Hitachi? But that's a graph showing water levels that can work. Some of them low, some of them high. Why do you say they all are above the close level? Wouldn't that depend upon how much cloth you had in there? No, what figure four is relevant for is that it shows that when you get below 125 millimeters of water, the machine stops working. There is no longer any rollover and that's what Mr. Fukuzawa testified to. So when you get below a certain water level, 125 millimeters, there is no longer any inverse toroidal motion. A dry washing machine doesn't work very well, does it? Well, actually, Your Honor, what we show is that in the 722 patent, it does work without water. If you look at figure eight of the 722 patent, that shows that you continue to get inverse toroidal motion even if there is no fluid water. The clothes are wet. They should be sopping wet. You throw them in there, but you continue to get inverse toroidal motion. So that's another example showing that the 722 works in a very different way. I ain't going to wear them. And Your Honor, I would never ask you to. I would have thought your answer to Judge Rader's question about the significance of having two quite close anticipating references might have been, well, but Your Honor, that's the problem with LG's case, which is that they have two very close anticipating references, but close is not good enough in a case such as this. You have to have an anticipating reference that actually anticipates. And it doesn't matter how many more close ones you have, they still don't anticipate. Now, that leaves, I'm not trying to make your case for you. I'm simply leading up to a question. And my question is, how do you respond to their argument that if the proposed anticipating reference that's thought to be close does in fact contain enough different options or enough different ideas in it that you could put together piece by piece an anticipating reference even though you have to sort of make an argument to get that result. Their argument is, that's good enough. That's an anticipating reference, even if there's a lot of stuff in there that is different. What is your response to that? Well, you know, the clear, simple, straightforward response is, you only reach their point of saying it isn't a material dispute by making a whole host of underlying assumptions, which is what the judge did below, where you agree with what their expert says, where you reject what our expert says, where you agree with what their Hitachi inventor, Shigemori, says, where you disagree with what Fukuzawa says, where you dispute, disagree with what the inventor says. But isn't that exactly what a trial judge is supposed to do? Exactly, your honor. That just goes to show why there is many material disputed fact issues here. Mr. Boehner, would you like to bring this to a close? Any final comments? I would also dispute, your honor, that the daily washer is even close. They started off their case by arguing that all the daily washers would work the same. Because of that, they tried to bootstrap that they had good testing, at least in the sense of numerous testing of the machine which they owned in Louisville. Thank you. Mr. Boehner went over a little bit. Did you get a chance to respond to your final comment, Mr. Adamo? I think Judge Plager had a question for you, if I recall. Can I beg the court's indulgence for five  I'll give you two minutes. That's what I was waiting for. Your two minutes. Well, he's wrong about the Daewoo machine. Here's why. One, you don't need to prove that every Daewoo machine does ITM to anticipate. All you have to do is prove that the Massachusetts machine anticipates. There's proof up one side and down the other about that. Stick your hand in to see if there's reverse toroidal motion. Their own expert at A6514, Mr. Duncan, says that's the way you do it. And LaBelle, who's one of the inventors, says that's the way you do it. Very sophisticated test. It simply works. It's the type of stuff the juries understand. You put your hand in like you'd be washing the clothes at home. You feel them getting pulled and you know it works. This bit about push versus pull, this is the world's greatest point of view game. If you're at the outside of the drum looking in, it looks like they're getting pushed. If you're standing at the center of the impeller looking out, it looks like they're getting pulled. No testified. He owned the machine since 1997. Nobody ever touched anything of importance in the way of the controller or any of the other devices that would have an effect on how it operated and water depth. He testified under normal washing conditions. He was very specific to say, I offered three types of services. Dry cleaning, wet cleaning, that's the context in which he testified about wet cleaning, and normal washing. He testified that under normal washing conditions, I saw ITM numerous times, more times than he could even be specific about as to how many times, and you will see that at appendix pages 80, 72, I'm sorry, 86, 86 through 88, 87, 23 through 25. When their own people finally saw the machine, there's the supposition that somebody monkeyed with it. Ms. LaBelle finally, way after the fact, got access to the machine. She didn't say anything about anybody making the modification. So, you can draw an inference from those circumstances. I'm trying to keep the time pretty even here, Mr. Adamo, and I'm afraid it's expired on you. Thank you. Can I just ask one quick final question? You haven't mentioned your attorney's fees appeal. Should we assume it's waived? No, I think you should assume, Your Honor, that in view of the challenges of the argument timed, it's standing on our briefing for that. Okay. Your Honor, since this has been my appeal, can I have one minute for rebuttal? Well, time's pretty even. Let's do this. You take another minute, and then I'll give you a minute. Go ahead, Mr. Adamo. You've got your minute. I've got my minute. Hitachi. Okay. Claim one of Hitachi, the second page of the reference, it's at A7240 at the top, is clear that it is inverse to Royal. Figure three is clear that it is inverse to Royal. Figure three supposedly showing the water level. I'm not sure where counsel got that from. It's not in the record. It doesn't identify that line in figure three as it exists in Hitachi as being water level, the close level, and you'd better look closely at their brief when they show you figure three versus figure five, because the figure three in their brief ain't the figure three that's shown in Hitachi. They've added something to it, and that really biases the view here. The figure five discussion remains an embodiment, and Judge Plager, I did not suggest that you could go through this reference piece by piece to construct anticipation, because as Your Honor is well aware you can't do that under this Court's law. You don't have to. It's there, starting with claim one, which I believe you were the one who directed. Thank you, Mr. Adamo. Also including those figures. Thank you, Your Honor. I appreciate the effort. Thank you, Mr. Adamo. Mr. Boehner, we gave you a minute. Thank you, Your Honor. I want to address the Day Rule first. There is no evidence in this record that anybody, Sundell or anybody ever did the famous hand test on the Massachusetts Day Rule. If you go through their brief carefully, what you see is that Sundell says about how when he was in Louisville, working with a machine owned by GE, he did all of these tests, including the hand test. Then later on in their brief, they say that Sundell testifies that he looked at the Massachusetts machine, did some things with it, very unclear what, and that he found that it worked substantially the same as the Louisville machine. He never, ever says that he did the hand test on the Massachusetts Day Rule. Then at the end, they argue that he's already established that the Massachusetts Day Rule does the dragging. No evidence of that. They gave that up when they gave up reliance on the Louisville machine and when they gave up arguing that they're all the same. Second of all, there's lots of evidence about the broken condition. It smoked, it had pumps attached to it, it had a spin cycle that didn't work, etc.